### HELMERS et al. v. ANDERSON.
No. 10198.

Circuit Court of Appeals, Sixth Circuit.
June 24, 1946.

48

Murray Seasongood and Joseph A. Segal, both of Cincinnati, Ohio (Robert P. Goldman, of Cincinnati, Ohio, on the brief), for appellants.

Robert S. Marx, of Cincinnati, Ohio (Frank E. Wood, Harry Kasfir, and William C. Kelly, all of Cincinnati, Ohio, on the brief), for appellee.

Ralph E. Clark, of Cincinnati, Ohio, for amicus curiae.

Lewis Levy, of Cincinnati, Ohio, pro se.

Before ALLEN, MARTIN and MILLER, Circuit Judges.

MILLER, Circuit Judge.

This appeal presents the question whether appellee's action, seeking to collect a "double liability" assessment levied by the Comptroller of Currency upon the stockholders of The National Bank of Kentucky, of Louisville, Kentucky, was barred by the Statute of Limitations. The District Court held that the action was not so barred and overruled appellants' motion to dismiss the Bill of Complaint.

The Bill of Complaint, filed on December 12, 1936, in the United States District Court for the Southern District of Ohio, states that The National Bank of Kentucky of Louisville, Kentucky, was closed by resolution of its board of directors on November 16, 1930; that on November 17, 1930, the Comptroller of the Currency of the United States, being satisfied that the bank was insolvent appointed Paul C. Keyes receiver, who thereupon duly qualified and took possession of the books, records and assets of the bank and continued in control as such receiver until December 15, 1932, at which time he was succeeded by the plaintiff-appellee, A. M. Anderson; that on February 20, 1931, the Comptroller of the Currency, by virtue of the authority vested in him by law, made an assessment and requisition upon the shareholders of the bank for $4,000,000 to be paid by them on or before the first day of April, 1931, and directed the receiver "to take all necessary proceedings by suit or otherwise to enforce the individual liability of said shareholders"; that acting pursuant to the authority and direction of the Comptroller of the Currency the Receiver on March 20, 1931, sent by registered mail to the shareholders of BancoKentucky Company, a Delaware corporation which owned substantially all of the stock of The National Bank of Kentucky, the following assessment notice:

"Louisville, Ky., March 20, 1931.

"As a stockholder in the BancoKentucky Company, you will please take notice, that the Comptroller of the Currency has on February 20, 1931, levied an assessment upon the stockholders of The National Bank of Kentucky, Louisville, Ky., on the par value of each and every share, payable at the Office of the Receiver, on or before April 1, 1931. A notice of such assessment and a demand for payment of the same has been served upon the Receiver of The BancoKentucky Company as the holder of 540,484 trustees' participation certificates, issued under a certain trust agreement of April 22, 1927, which trustees' participation certificates represent the ownership of 37,-721.624 shares of stock in The National

Bank of Kentucky. You will, therefore, take notice that it is the intention of the undersigned, as Receiver of The National Bank of Kentucky, to proceed against you for the collection of the aforesaid assessment liability represented by the said trustees' participation certificates held by said BancoKentucky Company, to the extent that the undersigned, as Receiver of The National Bank of Kentucky, is unable to collect said assessment from The Banco-Kentucky Company or its Receiver.

"Paul C. Keyes

"Receiver of The National Bank of Kentucky

"Louisville, Kentucky";

that he enclosed and attached thereto a copy of the order of assessment made by the Comptroller; that on October 31, 1931, the Receiver filed an action against the Receiver of The BancoKentucky Company in the United States District Court for the Western District of Kentucky, praying judgment by reason of the assessment in the amount of $3,772,162.40 and on September 14, 1932, recovered judgment for the full amount of the assessment plus interest, which judgment was affirmed by the United States Circuit Court of Appeals and is wholly unpaid and unsatisfied except for a credit of $90,745.17; that the depositors and creditors of The National Bank of Kentucky had only been paid 67% of the face amount of their deposits and claims, and that there was due him as Receiver of The National Bank of Kentucky by reason of the stock assessment the unpaid balance of $3,680,719.05. The Bill of Complaint named as defendants some 300 stockholders of Banco Kentucky Company who were residents of the State of Ohio. Thereafter certain defendants filed motions to dismiss by which they raised the defense of the Statute of Limitations. Berry et al. v. Chrysler Corporation, 6 Cir., 150 F.2d 1002.

Except for the defense of the Statute of Limitations, and other special defenses available to certain defendants, the issues in this case are the same as those involved in Anderson v. Abbott, which was filed by the Receiver of The National Bank of Kentucky in the Western District of Kentucky against shareholders of BancoKentucky Company residing in Kentucky. 32 F.Supp. 328. Action in this case was suspended until that litigation, on the issues other than Statute of Limitations, could be finally disposed of by the Supreme Court of the United States. In that case the District Court rendered judgment for the defendants. The judgment was affirmed by the Court of Appeals for this Circuit. Anderson v. Abbott, 127 F.2d 696. On review, the Supreme Court of the United States held the defendants liable on the assessment and remanded the case to the District Court for appropriate action. Anderson v. Abbott, 321 U.S. 349, 64 S.Ct. 531, 88 L.Ed. 793, 151 A.L.R. 1146; rehearing denied, 321 U.S. 804, 64 S.Ct. 845, 88 L.Ed. 1090. Those opinions set out fully the relationship between The National Bank of Kentucky and BancoKentucky Company and the basis of liability, making it unnecessary to repeat it here. That ruling will control the decision in this case on its merits if the action is not barred by the Statute of Limitations. Thereafter the District Court overruled the motions, and by agreement of counsel and with the Court's consent the four appellants herein declined to plead further and final judgment for their proportionate share of the assessment was rendered against them to provide a test case. From this judgment the appeal is taken.

■■■ Although the suit was brought in equity the complaint seeks to enforce a legal right for which equity provides a concurrent remedy to avoid a multiplicity of suits. Bailey v. Tillinghast, 6 Cir., 99 F. 801. In such a case the Federal Court sitting in equity will apply the applicable statute of limitations. Russell v. Todd, 309 U.S. 280, 60 S.Ct. 527, 84 L.Ed. 754. It is conceded by the parties herein that the Federal statutes provide no period of limitation for actions to enforce the liability of national bank stockholders, and accordingly the statute of limitations of the state in which the action is brought is applicable. Rawlings v. Ray, 312 U.S. 96, 61 S.Ct. 473, 85 L.Ed. 605. It is also agreed that the complaint sets forth an action "upon a liability created by statute." 38 Stat. 273, § 64, Title 12 U.S.C.A. The

General Statute of Limitations of Ohio provides that an action "upon a liability created by statute other than a forfeiture or penalty, shall be brought within six years after the cause thereof accrued." G. C. § 11222. Ohio also has a special Statute of Limitations, generally known as the "Borrowing Statute" which reads—

"If the laws of any state or country where the cause of action arose limits the time for the commencement of the action to a less number of years than do the statutes of this state in like causes of action then said cause of action shall be barred in this state at the expiration of said lesser number of years." G.C. § 11234.

The Kentucky Statute of Limitations is also involved. Section 413.120, Kentucky Revised Statutes provides as follows:

"An action upon a liability created by statute, when no other time is fixed by the statute creating the liability, * * * shall be commenced within five years [next] after the cause of action accrued."

█ Regardless of some early doubt in the matter, it is now settled that in an action by the receiver of an insolvent national bank to collect a Comptroller's assessment the statute of limitations does not begin to run until the day fixed by the Comptroller for payment. Rawlings v. Ray, supra; Fisher v. Whiton, 317 U.S. 217, 63 S.Ct. 175, 87 L.Ed. 223. In the present case, that date was April 1, 1931. The Bill of Complaint was filed on December 12, 1936. If the Ohio General Statute of Limitations is applicable the complaint was filed within the 6-year period provided. On the other hand, if the Kentucky Statute of Limitations is applicable by reason of the Ohio Borrowing Statute above referred to on the ground that the cause of action arose in Kentucky, then the complaint was not filed within the 5-year limit provided by the Kentucky statute. This requires a ruling on the narrow question of "where the cause of action arose," as the words are used in the Ohio Borrowing Statute. Appellants contend that the five year Kentucky statute is applicable because the cause of action arose in Kentucky, where The National Bank of Kentucky was located and transacted business, where insolvency occurred, where the Receiver had his office and where the assessment was directed by the Receiver to be paid. They contend in the alternative that if the cause of action did not arise in Kentucky, it arose in the District of Columbia, where the applicable statute of limitations is 3 years. The appellee contends that the cause of action arose by virtue of a Federal statute and not by the law of Kentucky or any other state, that it arose in the United States, a country within the meaning of the terms contained in the Ohio Borrowing Statute, and not in the State of Kentucky or the District of Columbia, and that the laws of the United States, being the country where the cause of action arose, do not limit the time for the commencement of the action to a less number of years than do the statutes of Ohio, which necessarily means that the Ohio Borrowing Statute (making applicable the Kentucky Statute of Limitations or the District of Columbia Statute of Limitations) is not applicable.

█ A cause of action "is the fact or combination of facts which gives rise to a right of action, the existence of which affords a party a right to judicial interference in his behalf." Baltimore & O. R. Co. v. Larwill, 83 Ohio St. 108, 115, 116, 93 N.E. 619, 621, 34 L.R.A., N.S., 1195. See Oman v. Delius, 162 Tenn. 192, 199, 200, 35 S.W.2d 570; Maryland Casualty Co. v. Gerlaske, 5 Cir., 68 F.2d 497, 499. The place where a cause of action arises is the place where the operative facts that give rise to the action occur. Although it may be necessary that a number of separate facts exist in order to create a cause of action, yet it is the happening of the last of such facts which brings the cause of action into existence. Such an act, or the failure to act where there is a duty to do so, is the critical event which transforms a potential liability into one presently enforcible. See Brown v. O'Keefe, 300 U.S. 598, 603, 57 S.Ct. 543, 81 L.Ed. 827. A liability, whether created by contract or by statute, is not the same as a cause of action. A person may execute a note payable in the future. Such an obligation is a liability, but it does not become a cause of action

until the note matures and the maker fails to pay. A business man may make a contract obligating him to manufacture and deliver certain goods at a time in the future. His obligation under that contract is a liability, but no cause of action exists against him until the date of performance arrives and he fails or refuses to perform. The income tax law imposes an obligation upon citizens to pay an income tax upon net income for the year previously ended. The amount of this tax is a liability, but no cause of action has accrued against the taxpayer until the date when the tax becomes payable and he has failed to pay. In the present case, a Federal statute created the potential liability of the defendant-stockholders, but the existence of this statute did not by itself create a cause of action against them. Nor did the existence of the statute coupled with the insolvency of The National Bank of Kentucky create a cause of action, although it formed the basis for one later to arise. Nor did the subsequent assessment by the Comptroller of the Currency, added to the existence of the statute and the insolvency of the bank create the cause of action, although it did change a potential liability into an actual one. Before the Receiver could rightfully sue the defendant-stockholders in this case, it was necessary that not only the foregoing facts exist but in addition thereto the liability to pay the assessment must have matured by the passage of time to April 1, 1931, the date of payment specified in the assessment, and the defendants have failed to make payment on or before that time. It seems clear that if any stockholder had paid to the Receiver his portion of the assessment at any time during March, 1931, no cause of action of the kind herein sought to be enforced would have at any time arisen or existed against him. The failure of the stockholder to pay on or before the date set for payment by the Comptroller is accordingly the critical event which transformed the liability into a cause of action. At that time and upon the happening of the last of those events the Statute of Limitations began to run. Rawlings v. Ray, supra; Fisher v. Whiton, supra. The time when a cause of action arises and the place where it arises are necessarily connected, since the same act is the critical event in each instance. The final act which transforms the liability into a cause of action necessarily has both aspects of time and place. It occurs at a certain time and in a certain geographical spot. Appellee apparently concedes the correctness of such reasoning by his reference in his brief to the opinion of Cleasby, one of the Judges of the Court of Exchequer in Durham v. Spence, the Law Reports Exchequer Cases, Vol. 6, 1870–1871, Page 52.

The question thus necessarily narrows itself into determining where the failure to pay the assessment ordered in the present case occurred. The notice which the Receiver sent to the defendant-stockholders on March 20, 1931, recited that the assessment was payable at the office of the Receiver, on or before April 1, 1931. Appellee points out that the preceding assessment by the Comptroller, on which the validity of the notice is based, did not designate the place of payment, and that the Receiver was in error in stating that the assessment so provided. That is correct. However, the assessment directed "the Receiver, heretofore appointed, to take all necessary proceedings, by suit or otherwise, to enforce to that extent the said individual liability of the said shareholders." While the Receiver enforces the liability created by the assessment, he does so subject to the direction of the Comptroller. It is settled that the Comptroller in making the assessment has the authority under the statute to fix a date for its payment, and to change an original date so fixed to a later date. Rawlings v. Ray, supra; Fisher v. Whiton, supra. Such authority is broad enough to include the designation of a place of payment as well as the time of payment, in the absence of any such contrary designation in the contract between the parties. When not so designated by the Comptroller, the Receiver had such authority under his direction by the Comptroller to take all necessary proceedings to enforce the assessment. It is stipulated in the case that the organization certificate of the National Bank of Kentucky provides that the place where its operations are to be carried on was

Louisville, Kentucky, and that the business of The National Bank of Kentucky was at all times actually carried on and transacted in Louisville, Kentucky, and in no other place. The Receiver, accordingly, took over the books and assets of the insolvent bank and carried out the liquidation at that place. His office was in Louisville, Kentucky. He had no office in Ohio, nor do we see any real reason for requiring him to set up an office there or in the several other states where stockholders might reside. His designation of his office (in Louisville, Kentucky) as the place of payment was both logical and reasonable and within the authority conferred upon him. We believe it necessarily follows from the foregoing analysis of the facts that the cause of action herein sued on arose in Kentucky.

The same question was presented to the District Court of Pennsylvania in Anderson v. Andrews, 62 F.Supp. 705, where this same receiver brought suit against stockholders residing in Pennsylvania. It was there held under a similar Pennsylvania Borrowing Statute that the Statute of Limitations of Kentucky was applicable to and barred the cause of action set out in the complaint. Reference is made to the opinion in that case and to the authorities cited therein. The ruling is also supported by the following decisions from this Court in analogous situations; Baltimore & O. R. Co. v. Reed, 6 Cir., 223 F. 689, certiorari denied, 239 U.S. 640, 36 S.Ct. 160, 60 L.Ed. 481; Auglaize Box Board Co. v. Kansas City Fiber Box Co., 6 Cir., 35 F.2d 822, certiorari denied, 281 U.S. 730, 50 S.Ct. 247, 74 L.Ed. 1147; Hilliard v. Pennsylvania R. Co., 6 Cir., 73 F.2d 473, certiorari denied, 294 U.S. 721, 55 S.Ct. 548, 79 L.Ed. 1253. Appellee attempts to distinguish the three cases from this Circuit by pointing out that two of them involved tort actions in which the accident occurred in states other than Ohio where the suit was brought, and that the third case involved a breach of contract occurring in a state other than

Ohio where the suit was brought. He contends that in each of those cases the cause of action arose by reason of an illegal act on the part of the defendant and that the resulting liability was accordingly based upon fault, while in the present case he contends the liability exists by virtue of the Federal statute and without fault on the part of the defendants. The claimed distinction again fails to properly distinguish the difference between a liability and a cause of action. It is true that the liability in the present case exists without fault on the part of the defendants, but the cause of action came into existence by reason of the failure of the defendants to pay the assessment at the time and place provided. A failure to perform a legal duty at the time required is equivalent in the present case to an affirmative act. As previously pointed out, that fact occurred in Kentucky. We believe the decisions are closely in point.

We cannot agree with appellee's contention that the cause of action arose in the United States and not in any state thereof. The distinction urged upon us by counsel seems highly theoretical and to disregard the fact that the United States as a geographical unit comprises the 48 separate states and the District of Columbia. If the critical act occurred within the geographical limits of the United States it necessarily occurred within the geographical limits of one of the 48 states or the District of Columbia. In this case the liability is created by a law of the United States, rather than by the law of Kentucky or of any other state, but the cause of action arose through a combination of that law and the failure to perform the duty imposed by that law. The failure to perform the required duty occurred in Kentucky, not in the United States generally without occurring in any of the subdivisions thereof.

The judgment of the District Court is reversed and the cause remanded for further proceedings consistent with the views expressed herein.